GLADNEY, Judge.
This is an action ex delicto instituted by Rodell Blanchard Fairbanks in his individual capacity and as administrator for *740 his minor children, Cassie Fairbanks, aged seventeen and Thomas Earl Fairbanks, fourteen years of age, for the recovery of damages arising from personal injuries suffered in a collision between two motor vehicles while the children were guest passengers in an automobile owned and operated by Walter Willingham. Made respondents herein are Cecil L. King and his liability insurer, Traders and General Insurance Company. The accident in which the Fairbanks children were injured took place on August 6, 1954, at approximately 10:30 o’clock p.m., at which time the Will-ingham automobile in which Cassie and Thomas Earl Fairbanks and James Ray Morgan were riding as guest passengers, was traveling in a southerly direction on U. S. Highway No. 165, about one mile south of Pollock, in Grant Parish, Louisiana, when the vehicle driven by Walter Willingham was struck in a head-on collision by a pick-up truck being operated by Cecil L. King. Willingham was instantly killed and all other occupants of the two vehicles received serious injuries. A companion suit, entitled Morgan v. Traders and General Insurance Co., La.App., 95 So.2d 743, in which the recovery of damages is sought for injuries sustained by James Ray Morgan has been consolidated with these proceedings for purposes of trial and judgment. After a trial on the merits, judgments were rendered rejecting in toto the demands of each of the claimants. From the decree this appeal was perfected by plaintiff.
For a cause of action the petitioner has alleged that the accident was caused solely by the negligence of Cecil L. King in driving at an excessive rate of speed, in driving improperly and unlawfully down the center of the highway and while driving under the influence of intoxicating beverages, by not keeping a careful lookout, and by driving with wanton disrespect of other vehicles on the highway. Defendants specifically deny the allegations of negligence attributed to King and assert the accident was due entirely to the negligence of the decedent, Walter Willingham: in failing to maintain a proper lookout, driving at an excessive rate of speed, in not having his vehicle under control, driving in the left side of the highway and in driving in a reckless, careless manner while in an intoxicated condition. Further pleading alternatively, Cassie Fairbanks and Thomas Earl Fairbanks are charged with independent contributory negligence in that they placed themselves in a position of danger by riding in a vehicle known by them to be driven by a person in an intoxicated condition.
After a careful examination of the record which contains nearly five hundred pages of testimony, we find the primary question to be determined is whether or not Cecil L. King was guilty of actionable negligence. This is in fact the only issue to which we are to direct our consideration, inasmuch as there is no substantial evidence upon which a plea of contributory negligence may be exercised to bar any valid rights of the minors who were riding in the car of Walter Willingham. Further, the record does not make Willingham a party to the suit and consequently his negligence is immaterial to a decision herein. This is to say that plaintiff is entitled to recover any proven damages if it is shown by the evidence that King was guilty of any negligence contributing to the accident.
The accident followed these related circumstances: On the afternoon of August 6, 1954, King and his wife left Westwego, Louisiana, which town is two hundred three miles, more or less, from the scene of the accident. They carried with them some sandwiches and four cans of beer to be consumed on their journey to Olla, Louisiana, where a relative of Mrs. King was about to undergo surgery. They stopped briefly along the way at two places where Mrs. King said they drank coffee. She testified that between Westwego and Baton Rouge she drank one can of the beer and that her husband took no alcoholic drinks of any sort. She related that just before the accident she made herself comfortable *741 on the front seat and was asleep at the time the two motor vehicles collided. Walter Willingham, shortly before the accident, requested O. J. Honeycutt to take Cassie Fairbanks in his car to the Pollock movie theater and bring back Thomas Earl Fairbanks and James Ray Morgan, who had been watching the picture show. After Honeycutt had picked up the boys he delivered the car to Willingham, who, after stopping briefly by his sister’s home, proceeded to take his passengers to their homes south of Pollock and met with the accident which resulted in his death.
Strangely enough, not one of the surviving five occupants gave any direct testimony bearing upon the events immediately preceding and leading up to the crash of the two vehicles. King sustained serious and severe head injuries which his attending doctors stated resulted in an impairment of his brain. King testified he had no recollection of anything relating to the accident or his journey from Westwego to the scene of the accident. He related his last remembered act was at 2:30 o’clock p.m. on the day of the accident when he spoke to his employer and after that he had absolutely no recollection of anything which happened to him until fifteen days following his injury. Mrs. King testified she was asleep when the accident occurred. Cassie and Thomas Earl Fairbanks and James Ray Morgan all testified they had no recollection of how the accident occurred. This situation imposed upon plaintiff the necessity of establishing his case by circumstantial evidence.
Specifically, it is alleged that King was negligent in driving at an excessive rate of speed, in a reckless manner while intoxicated, and that physical evidence relating to the damage inflicted to and the position of the two automobiles following the impact indicate the King pick-up truck was outside of its proper lane of travel at the moment of the collision.
To substantiate the charge of excessive speed, plaintiff can rely only on inferences which we consider remote and speculative. First, it is contended King drove from Westwego to the locus of the accident, a distance of two hundred miles, in a period of time which counsel for plaintiff reasoned was about four hours. From this it is argued that King’s average speed for the distance was 50.6 miles per hour and, therefore, at the moment of the accident he was exceeding the legal speed of forty-five miles per hour as fixed by the State Motor Vehicle Regulatory Act, and particularly LSA-R.S. 32:225. The fallacy of this deduction is manifest. King may well have been going seventy miles per hour at one point along the journey and twenty miles at another. The only relevant fact is the speed at which he was driving his truck at the time of the collision. There was not one scintilla of relevant evidence upon this important factor. Secondly, reliance is placed upon the testimony of T. J. Smith, who operated a service station about two hundred yards south of the point where the accident occurred. He testified the truck passed his station at a fast rate of speed and was traveling down the center of the highway and weaving. Smith’s testimony was somewhat impeached by the testimony of Trooper C. D. Bates, but this is of no import because we consider the evidence remote and - speculative. Likewise, the testimony of O. J. Honeycutt and Layton Campbell, who testified they. observed a pick-up truck driving in the center of the highway at points distant from the collision, is in our considered opinion, remote and speculative. We may add that none of these witnesses gave any clear and positive identification of the King truck. It is our finding plaintiff has entirely failed to substantiate by evidence of probative value that the pick-up truck driven by King was at the time of the accident traveling at an unlawful rate of speed.
Nor is there any proof whatsoever that King was in an intoxicated condition while driving his truck. The only direct testimony is that of Mrs. King who says that at the time she left Westwego there were *742 four cans of beer in the truck, that between Baton Rouge and Westwego she drank one of these, and that her husband did not drink any beer or other intoxicating beverage. After the accident three unopened cans of beer were found in the truck. It is true that Mrs. King gave testimony by deposition which she later contradicted in some respects, but according to this factor its proper weight, there still remains no evidence from which we may properly infer that King was in such a condition he did not or could not have had proper control over his truck.
Finally, plaintiff urges that we must find that the King truck at the moment of collision had invaded the lane of travel which properly belonged to Willingham. Again the proof offered fails to substantiate the contention. Found in the record is a photograph, enlarged as published in an Alexandria newspaper, which undeniably shows the force of the impact struck the left front portion of each of the two cars involved. But seizing upon a statement made by Trooper A. B. Corley to the effect the entire front of the King truck was damaged, counsel has determined that the King truck was at the moment of impact six inches across the center of the asphalt. We have carefully read the testimony of Trooper Corley and it is clear to us that he did not testify the entire front portion of the truck was involved in the impact, other than to state the entire front of the truck was damaged. Photographs of the vehicles more reliably reveal with clarity that the direct blow sustained by each vehicle was confined within its left front half.
Troopers A. B. Corley and C. D. Bates, both of whom had had considerable experience in the investigation of automobile accidents, expressed their conviction that the accident occurred in King’s proper lane of traffic, and this was evidenced by the debris and a gouged out place in the asphalt found therein. At the point of collision the asphalt portion of the highway was measured and found to be twenty-two feet, seven inches in width. There was no marked center line. The indentation in the asphalt was thirteen feet, nine inches from the outside edge of the southbound lane, or west half of the highway, which lane would be Willingham’s course of travel and distant eight feet, ten inches from the edge of the northbound lane or east half of the asphalt, which would be the proper lane of travel for the King truck. The officers stated the gouged out place in the highway was manifestly made by the left front rim and wheel of the Willingham automobile, the tire thereon having been torn away in the crash. It was their opinion that as the Willingham car pivoted on the left front rim and wheel from the blow it was struck, the rim or wheel dug out a hole in the asphalt. It was further reasoned that since the tire remained on the left front wheel of the truck after the accident, the highway was damaged solely by the left front rim and wheel of the Willingham vehicle. This physical evidence is not refuted and its presence in King’s proper lane of travel demonstrates, we think, rather conclusively that Willing-ham invaded the east lane of traffic and precipitated the accident. There is nothing in the evidence, we think, which in the slightest degree indicates King was not on his proper side of the highway at the time of the impact.
The foregoing findings which impress us as being free of uncertainty require this coui't to hold that Cecil L. King was entirely blameless. This resolution renders it unnecessary to consider the other issues tendered.
For the reasons above stated, the judgment from which appealed is affirmed at appellant’s costs.